**Elisa DE JESUS RIVERA, et al., Plaintiffs,**

v.

**R.J. REYNOLDS TOBACCO COMPANY, et al., Defendants.**

**No. CIV.03–1099(JAF).**

United States District Court, D. Puerto Rico.

May 4, 2005.

Amarilys Arocho–Maldonado, Arocho Maldonado Law Office, Utuado, PR, Archie Jennings, St. Thomas, VI, Myrna E. Ayala–Diaz, San Juan, PR, for Plaintiffs.

James R. Johnson, L. Christine Buchanan, Jason E. Keehfus, Robin A. Schmahl, Jones Day, M. Derek Harris, Atlanta, GA, Rosalie Irizarry–Silvestrini, Clotilde Rexach–Benitez, Fiddler, Gonzalez & Rodriguez, San Juan, PR, for Defendants.

## OPINION AND ORDER

FUSTE, District Judge.

Plaintiffs, Elisa de Jesús Rivera; Jorge Antonio Rivera; José Alberto Rivera; Idaly Rivera de Jesús; Maribel Rivera de Jesús, individually and as guardian and natural mother of Jessica M. Vázquez Rivera; Miguelina Rivera de Jesús; Jorge Luis Rivera de Jesús; Osvaldo Rivera de Jesús; Humberto Rivera de Jesús; Luis Antonio Rivera de Jesús; and Angel David Mateo Rivera; ("Plaintiffs"), bring this tobacco products liability action against Defendants R.J. Reynolds Tobacco Company ("Defendant Reynolds"); R.J.R. Nabisco, Inc. ("Defendant R.J.R. Nabisco"); Nabisco Group Holdings ("Defendant Nabisco"); and Liggett & Myers Tobacco Company ("Defendant Liggett"). Plaintiffs allege that Defendants are liable under various state and federal causes of action for Jorge Esteban Rivera Rodríguez' death. *Docket Document No. 1.* Plaintiffs seek compensatory and punitive damages, and attorney's fees. *Id.*

Defendant Reynolds moves for summary judgment. *Docket Document Nos. 62, 69.* Plaintiffs oppose the motion. *Docket Document No. 72.*

## I.

### Factual and Procedural Synopsis

We derive the facts from our March 31, 2004, opinion and order, as well as from the parties' pleadings and statements of material fact. *Docket Document Nos. 30, 62, 73, 74, 99.* Plaintiffs are the family members of Jorge Esteban Rivera Rodríguez, ("Decedent").

Defendant Reynolds is a cigarette manufacturing company.

Decedent began smoking in 1956. He continued smoking as many as three packs of cigarettes per day over the ensuing forty-six years. Throughout his adult life, Decedent kept abreast of current events, by frequently watching daytime and evening television news programs and reading newspapers. Over the course of several decades, Decedent's family members (including Plaintiffs) and medical care providers had advised him to stop smoking because of the associated health risks. Decedent frequently laughed when warned of smoking's dangers, sometimes responding that "we all have to die of something." Decedent's wife and doctors read aloud warnings and health-related articles in an attempt to convince him to stop smoking. After discussing the cigarette package warning label with a doctor, Decedent responded, "I read it, and I understand it, but I'm not stopping." Decedent had friends and relatives who had died of smoking-related illnesses. Decedent attempted unsuccessfully to stop smoking in 1998, when he was diagnosed with tongue and mouth cancer and again warned of the risks of continued smoking.

Decedent died on February 3, 2002, at age eighty-two.

Plaintiffs filed the present complaint on January 31, 2003, alleging that Decedent died as a result of diseases caused by smoking cigarettes manufactured by Defendants. *Docket Document No. 1.* Plaintiffs alleged the following ten causes of

action: (1) strict liability; (2) negligence; (3) failure to warn; (4) breach of the Labeling Act; (5) breach of local law by noncompliance with federal law; (6) consumer expectation; (7) design defect; (8) loss of consortium; (9) fraud; and (10) violation of Puerto Rico Penal Code Article 189, 33 L.P.R.A. § 4307 (2003). *Id.*

On June 19, 2003, Defendant Reynolds moved to dismiss counts 3, 4, 5, 9, and 10 under Federal Rules of Civil Procedure 9(b) and 12(b)(6). *Docket Document No. 6.* On July 10, 2003, Defendant Liggett moved to join Defendant Reynolds' motion to dismiss. *Docket Document No. 15.* Because on August 28, 2003, Plaintiffs filed an amended complaint, *Docket Document No. 20,* Defendant Reynolds renewed its motion to dismiss on September 16, 2003, and Defendant Liggett renewed its motion to dismiss on February 20, 2004. *Docket Document Nos. 26, 29.* On March 31, 2004, we granted Defendants' motion to dismiss, finding that the failure-to-warn claims were preempted by the Federal Cigarette Labeling and Advertising Act, 15 U.S.C. §§ 1331–1341 (1997 & Supp.2004). *Docket Document No. 30.*

Plaintiffs' surviving claims are counts 1, 2, 6, 7, and 8. *Id.* We also consider Plaintiffs' pre–1969 failure-to-warn claims, which were not preempted by the Labeling Act.

On December 2, 2004, Defendant Reynolds moved for summary judgment, arguing that: (1) Plaintiffs' claims are time-barred; (2) the claims are precluded by the doctrine of conflict preemption; (3) Plaintiffs' negligence and strict liability design-defect claims fail because the cigarette designs were not defective under the consumer expectations test and the inherent dangers were known; and (4) there is no evidence to support Plaintiffs' pre–1969 failure-to-warn claims because the dangers of smoking were, at the time, well known.

*Docket Document No. 62.* On January 24, 2005, Defendant Liggett moved to join Defendant Reynolds' summary judgment motion. *Docket Document No. 69.* On February 1, 2005, Plaintiffs filed an opposition to Defendants' summary judgment motion, arguing, inter alia, that: (1) preemption did not apply; (2) the cause of action did not accrue until Decedent's death, rendering the claims timely; (3) the failure to require Spanish-language warnings on cigarette packages is an equal protection violation; and (4) Decedent's smoking history prior to 1969 renders Defendants liable for wrongful death because the warnings were insufficient, the dangers of smoking were not common knowledge, and Defendants' cigarettes are defectively designed and are responsible for Decedent's death. *Docket Document No. 73.* On April 21, 2005, we dismissed the claims against Defendant Liggett in accordance with Plaintiffs' dismissal stipulation. *Docket Document Nos. 126, 139.*

## II.

### Motion for Summary Judgment Standard Under Rule 56(c)

The standard for summary judgment is straightforward and well-established. A district court should grant a motion for summary judgment "if the pleadings, depositions, and answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgement as a matter of law." FEDERAL RULES OF CIVIL PROCEDURE. R. CIV. P. 56(c); *see Lipsett v. Univ. of P.R.,* 864 F.2d 881, 894 (1st Cir.1988). A factual dispute is "material" if it "might affect the outcome of the suit under the governing law," and "genuine" if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

■ The burden of establishing the non-existence of a genuine issue as to a material fact is on the moving party. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 331, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). This burden has two components: (1) an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and (2) an ultimate burden of persuasion, which always remains on the moving party. *See id.* In other words, "[t]he party moving for summary judgement, bears the initial burden of demonstrating that there are no genuine issues of material fact for trial." *Hinchey v. NYNEX Corp.*, 144 F.3d 134, 140 (1st Cir.1998). This burden "may be discharged by showing that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548. After such a showing, the "burden shifts to the nonmoving party, with respect to each issue on which he has the burden of proof, to demonstrate that a trier of fact reasonably could find in his favor." *DeNovellis v. Shalala*, 124 F.3d 298, 306 (1st Cir.1997) (citing *Celotex*, 477 U.S. at 322–25, 106 S.Ct. 2548).

■ Although the ultimate burden of persuasion remains on the moving party and the court should draw all reasonable inferences in favor of the nonmoving party, the nonmoving party will not defeat a properly supported motion for summary judgment by merely underscoring the "existence of some alleged factual dispute between the parties"; the requirement is that there be a genuine issue of material fact. *Anderson*, 477 U.S. at 247–48, 106 S.Ct. 2505; *Goldman v. First Nat'l Bank of Boston*, 985 F.2d 1113, 1116 (1st Cir. 1993). In addition, "factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248, 106

S.Ct. 2505. Under Rule 56(e) of the Federal Rules of Civil Procedure, the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial." FEDERAL RULES OF CIVIL PROCEDURE. R. CIV. P. 56(e); *see also Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. Summary judgment exists to "pierce the boilerplate of the pleadings," *Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d 791, 794 (1st Cir.1992), and "determine whether a trial actually is necessary." *Vega–Rodriguez v. P.R. Tel. Co.*, 110 F.3d 174, 178 (1st Cir.1997).

### III.

### *Analysis*

Because common knowledge of smoking's dangers, together with the applicability of the preemption doctrine, are fatal to Plaintiffs' claims, we need explore only these two issues, and none others presented in Defendants' motion for summary judgment or Plaintiffs' reply. *Docket Document Nos. 62, 72.*

### A. *Common Knowledge*

■ In order to succeed on their design-defect and pre–1969 failure-to-warn claims, Plaintiffs must show that ordinary consumers were unaware of smoking's dangers when Decedent became a smoker in 1956. *Prado Alvarez v. R.J. Reynolds Tobacco Co.*, 405 F.3d 36, 38–39 (1st Cir. 2005); *Cruz–Vargas v. R.J. Reynolds Tobacco Co.*, 348 F.3d 271, 275 (1st Cir. 2003)("[A] manufacturer cannot be held liable under either strict liability or negligence for failure to warn of a danger commonly known to the public."); *Guevara v. Dorsey Labs.*, 845 F.2d 364, 367 (1st Cir. 1988) ("[T]he duty to warn in general is

limited to hazards not commonly known to the relevant public.").

■ The parties disagree on whether smoking's dangers were common knowledge when Decedent commenced smoking in 1956. *Docket Document Nos. 62, 72.* Defendant expert Luis Martínez–Fernández' report, similar to the report he submitted in *Prado Alvarez,* surveys a wide variety of public sources, including magazines, newspapers, educational materials, and health publications dating back to the nineteenth century and mostly originating from Puerto Rico. *Docket Document No. 62, Exh. 19.* Martínez' report concludes that during Decedent's lifetime, there existed in Puerto Rico a "broad and increasing public awareness of the health hazards of cigarette smoking, including an awareness of the specific hazard of cancer, and widespread awareness that cigarette smoking was a 'habit' or an 'addiction' or a practice that proved difficult for many people to quit." *Id.* Martínez cited a 1928 Puerto Rican health education book which observed that "[t]obacco damages the brain and lungs;" a research article from a 1932 Puerto Rican medical journal which concluded that tobacco caused lung cancer among Puerto Rican citizens; a 1912 Puerto Rican religious publication which declared, "Nicotine is poison. Cigarettes are poison;" a subsequent 1935 edition which noted, "[since our earliest grades in school, we have learned that tobacco is harmful to health and child development .... Tobacco is a vice that harms your health and your wallet];" a 1944 edition which described smoking as "ingesting a carcinogen;" a 1945 edition which described tobacco's effect as "disastrous for the throat and lungs;" and a 1954 edition which describes smokers as candidates for "cancer and an early death." *Id.* Martínez also describes

the activities of the Puerto Rican Anti–Cancer League, founded in 1938 with the goal of educating the public on products, including tobacco, which cause cancer. *Id.* Martínez cites articles from 1951, 1954, 1955, and 1956 editions of *El Mundo,* a widely circulated daily newspaper, which investigated the serious health risks involved in nicotine use, including the causal link between tobacco use and cancer. *Id.* Citing at least thirty separate sources from the 1950s, Martínez' report suggests that the wealth of publicly-distributed information on the risk of cancer intensified strongly around the time that Decedent, then an adult who reportedly kept abreast of current events, began smoking.

Plaintiff expert Luis Díaz–Hernández' report focuses on the fact that there was no official, educational tobacco-awareness program in Puerto Rico when Decedent commenced smoking. *Docket Document No. 75, Exh. L.* Plaintiffs' expert report, which is limited in depth and focus, fails to seriously address Defendant's well-supported claim that tobacco was commonly understood to be a dangerous product at the time Decedent commenced smoking. In concluding that the dangers of smoking were poorly understood, Plaintiffs' expert report relies almost entirely on two interviews conducted with a pair of smokers: An elderly accountant and a prominent physician, respectively.[1] *Id.*

Performing our "gatekeeping function of assessing proffered expert evidence," *Prado Alvarez,* at 40, we find Plaintiffs' expert evidence insufficient. *See Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 592, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) ("Relaxation of the usual requirement of first-hand knowledge ... is premised on an assumption that the expert's opinion

---

1. From the report's language, it appears that the accountant interview was in fact conducted with the accountant's son, on his father's behalf. *Id.*

will have a reliable basis in the knowledge and experience of his discipline."). In contrast, we find Defendants' expert report convincing, detailed, and well-supported, firmly establishing that a literate adult who commenced smoking in the 1950s was sufficiently attuned to smoking's dubious reputation as a salubrious pastime. *Docket Document No. 62, Exh. 19.*

We are not alone in this assessment. In *Prado Alvarez,* based on nearly identical evidence, Judge Pieras found that "the health hazards and addictive nature of smoking" were "common knowledge in Puerto Rico" where Decedent began smoking in 1960. 313 F.Supp.2d at 75. The district court's finding, energetically criticized by Plaintiffs in the present suit, was resoundingly affirmed by the First Circuit. "[W]e agree with the district court that no reasonable jury, confined to the record, could conclude that the general public in Puerto Rico lacked knowledge about the risks of smoking, including lung cancer, by the time decedent started smoking in 1960." 405 F.3d at 43–44. The *Prado Alvarez* court noted that Martínez' assertions were as credible as they were when put forward in *Cruz–Vargas,* a case in which the district and appellate courts also found in the defendant's favor. *Id., citing* 348 F.3d at 278. We are unable to conclude, based on the evidence presented before us, that the First Circuit's finding in *Prado Alvarez* is inapplicable here simply because Decedent commenced smoking a mere four years earlier than the *Prado Alvarez* decedent.[2] We, therefore, find that in failing to show a lack of common knowledge, Plaintiffs have offered insufficient evidence to support their failure-to-warn and design-defect claims. Accord-

ingly, the design-defect and failure-to-warn claims are dismissed.

**B.** *Conflict Preemption*

 The doctrine of conflict preemption prevents state laws from being applied to conflict with federal statutes. *FDA v. Brown & Williamson Tobacco Corp.,* 529 U.S. 120, 121, 120 S.Ct. 1291, 146 L.Ed.2d 121 (2000). Conflict preemption occurs where "a federal statute implicitly overrides state law either when the scope of a statute indicates that Congress intended federal law to occupy a field exclusively or when state law is in actual conflict with federal law." *Freightliner Corp. v. Myrick,* 514 U.S. 280, 287, 115 S.Ct. 1483, 131 L.Ed.2d 385(1995). Congress has foreclosed the removal of tobacco products from the market. *Prado Alvarez v. R.J. Reynolds Tobacco Co.,* 313 F.Supp.2d 61, 72 (D.P.R.2004), *aff'g* 2005 WL 914199 (1st Cir. Apr.21, 2005); *Brown & Williamson Tobacco Corp.,* 529 U.S. at 121, 120 S.Ct. 1291 (2000) ("Congress' express policy is to protect commerce and the national economy while informing consumers about any adverse health effects."); 15 U.S.C. § 1331 (1998 & Supp.2004). "[A]llowing tort actions against cigarette manufacturers and sellers for the allegedly negligent act of continuing to make and sell cigarettes would interfere with Congress' policy in favor of keeping cigarettes on the market." *Cruz Vargas v. R.J. Reynolds Tobacco Co.,* 218 F.Supp.2d 109, 118 (D.P.R.2002)(quoting *Insolia v. Philip Morris Inc.,* 128 F.Supp.2d 1220, 1224 (W.D.Wis.2000)). We find that Defendants cannot be liable under Puerto Rico tort law for manufacturing and selling cigarettes. *Prado Alvarez,* 313 F.Supp.2d at 72–73.

---

**2.** We note that in contrast to Decedent in this case, Decedent in *Prado Alvarez* commenced smoking at an earlier age, had a more limited education, watched much less television, did not read the newspapers, and did not watch news programs. 405 F.3d at 36.

Plaintiffs' claims that Defendant negligently manufactured and marketed an inherently dangerous product are, therefore, dismissed.

## III.

### *Conclusion*

Plaintiffs' pre–1969 failure-to-warn, design-defect, and negligence, strict liability, and related claims are all preempted by either the conflict preemption doctrine or the fact that tobacco's dangers were common knowledge at the time Decedent began smoking. In accordance with the foregoing, we **GRANT** Defendant Reynolds' motion for summary judgment. Plaintiffs' claims are **DISMISSED** in their entirety. Judgment to enter dismissing the present case.

**IT IS SO ORDERED.**