Angelo VALLE–ORTIZ; Carlos Javier Valle–Ortiz; Ivan Alexis Valle–Ortiz, and Omar X. Valle–Ortiz, minor, represented by his mother and guardian, Maria M. Ortiz–Perez, Plaintiffs,

v.

R.J. REYNOLDS TOBACCO COMPANY, Defendant.

No. CIV. 03–1883(JAF).

United States District Court, D. Puerto Rico.

Aug. 31, 2005.

**127**

Amarilys Arocho–Maldonado, Utuado, PR, for Plaintiffs.

James R. Johnson, Jason E. Keehfus, L. Christine Buchanan, Robin A. Schmahl, Ryan E. Harden, Stephanie M. Howells, Jones Day, Atlanta, GA, Rosalie Irizarry–Silvestrini, Clotilde Rexach–Benitez, Fiddler, Gonzalez & Rodriguez, San Juan, PR, for Defendant.

## OPINION AND ORDER

FUSTE, Chief Judge.

Plaintiffs Ángelo Valle–Ortiz, Carlos Javier Valle–Ortiz, Iván Alexis Valle–Ortiz, Omar X. Valle–Ortiz, and María M. Ortiz–Pérez, as the mother and natural guardian of Omar X. Valle–Ortiz ("Plaintiffs"), bring this tobacco products liability action against Defendant R.J. Reynolds Tobacco Company ("Defendant"). Plaintiffs allege that Defendant is liable under various state and federal causes of action for Ángelo Valle–Sánchez' death. *Docket Document No. 1.* Plaintiffs seek compensatory and punitive damages, and attorney's fees. *Id.*

Defendant moves for summary judgment. *Docket Document Nos. 58, 82.* Plaintiffs oppose the motion. *Docket Document Nos. 67, 90.* The facts relevant to Plaintiffs' claims are stipulated and/or admitted.

## I.

### Factual and Procedural Synopsis

We derive the facts from our March 31, 2004, Opinion and Order, as well as from the admitted facts in the Proposed Pretrial Order submitted by the parties. *Docket Document Nos. 10, 70.*

Plaintiffs are the children of Ángelo Valle–Sánchez ("Decedent"). Defendant is a cigarette manufacturing company.

It is not entirely clear when Decedent began smoking. None of his family members saw him smoking until after he joined the Army in 1971. However, one of Decedent's friends claimed that he had seen Decedent smoking as an adolescent. De-

cedent continued smoking as many as two packs of cigarettes per day over the next thirty-nine years. Decedent kept himself abreast of current events. Decedent was described by his family as intelligent. He attended college, and read and spoke English. Throughout his life, Decedent's family members, friends, and medical care providers advised him to stop smoking because of the associated health risks. When warned, Decedent would respond not to "meddle in his life" or that he would try to cut down or quit. Decedent's sister read the package warnings to him and asked him to quit. Decedent's job supervisor told him that cigarettes would take him to the cemetery. Decedent's mother told him to quit smoking and drinking or he would end up like his father, who died of throat cancer in 1968. Nevertheless, despite repeated warnings from his family and friends, Decedent continued to smoke. Decedent died on August 18, 2002, at age fifty-one.

Plaintiffs filed the present complaint on August 19, 2003, alleging that Decedent died as a result of a disease caused by smoking cigarettes manufactured by Defendant. *Docket Document No. 1.* Plaintiffs alleged the following ten causes of action: (1) strict liability; (2) negligence; (3) failure to warn; (4) breach of federal law; (5) breach of local law by non-compliance with federal law; (6) consumer expectation; (7) design defect; (8) loss of love and affection; (9) violation of Puerto Rico Penal Code Article 189, 33 L.P.R.A. § 4307; and (10) fraud.

On November 12, 2003, Defendant moved to dismiss Plaintiffs' post-July 1, 1969 failure-to-warn and fraudulent misrepresentation claims under Federal Rules of Civil Procedure 9(b) and 12(b)(6). *Docket Document No. 4.* In addition, Defendant moved to dismiss the Plaintiffs' claims as time-barred. *Id.* On March 31, 2004, we granted Defendant's motion to

dismiss in part, finding that the failure-to-warn and fraudulent misrepresentation claims were preempted by the Federal Cigarette Labeling and Advertising Act, 15 U.S.C. §§ 1331–1341 (1997 & Supp.2004). *Docket Document No. 10.*

Plaintiffs' surviving claims are counts 1 (strict liability for design-defect and pre-July 1, 1969 failure-to-warn); 2 (negligent design-defect and pre-July 1, 1969 failure-to-warn); 6 (pre-July 1, 1969 failure-to-warn); 7 (strict liability design-defect); 8 (loss of love and affection); 9 (Article 189 of the Puerto Rico Penal Code); and 10 (fraud and pre-July 1, 1969 fraudulent misrepresentation). *Docket Document No. 1.* We, therefore, consider these claims.

On June 14, 2005, Defendant moved for summary judgment arguing that: (1) the adult Plaintiffs' claims are time-barred; (2) the claims are precluded by the doctrine of conflict preemption; (3) Plaintiffs' negligence and strict liability design-defect claims fail because the cigarette designs were not defective under the consumer expectations test and the inherent dangers were known; (4) there is no evidence to support Plaintiffs' pre–1969 failure-to warn claims because the dangers of smoking, were, at the time, well known; (5) there is no evidence that Plaintiffs' injuries were proximately caused by Defendant's conduct; (6) Plaintiffs' fraud claims fail because there is no evidence that Decedent ever heard, saw or relied upon any alleged misrepresentation; and (7) there is no evidence that Defendant violated Article 189 of the Puerto Rico Penal Code. *Docket Document No. 53.*

Plaintiffs filed an opposition to Defendant's summary judgment motion, arguing, inter alia, that: (1) preemption did not apply; (2) the cause of action did not accrue until Decedent's death, rendering the claims timely; (3) Defendant's cigarettes were defective because they caused Dece-

dent's laryngeal cancer and were addictive; (4) Decedent's smoking history prior to 1969 renders Defendant liable for wrongful death because the warnings were insufficient, the dangers of smoking were not common knowledge, and Defendant's cigarettes are defectively designed and are responsible for Decedent's death; and (5) Plaintiffs need not prove reliance because it is not required by the Puerto Rican concept of "dolo." *Docket Document No. 67.*

## II.

### *Motion for Summary Judgment Standard Under Rule 56(c)*

The standard for summary judgment is straightforward and well-established. A district court should grant a motion for summary judgment "if the pleadings, depositions, and answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Lipsett v. Univ. of P.R.,* 864 F.2d 881, 894 (1st Cir.1988). A factual dispute is "material" if it "might affect the outcome of the suit under the governing law," and "genuine" if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The burden of establishing the nonexistence of a genuine issue as to a material fact is on the moving party. *See Celotex v. Catrett,* 477 U.S. 317, 331, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). This burden has two components: (1) an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and (2) an ultimate burden of persuasion, which always remains on the moving party. *See id.* In other words, "[t]he party moving for summary judgment ... bears the initial burden of demonstrating that there are no genuine issues of material fact for trial." *Hinchey v. NYNEX Corp.,* 144 F.3d 134, 140 (1st Cir.1988). This burden "may be discharged by 'showing' ... that there is an absence of evidence to support the nonmoving party's case." *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548. After such a showing, the "burden shifts to the nonmoving party with respect to each issue on which he has the burden of proof, to demonstrate that a trier of fact reasonably could find in his favor." *DeNovellis v. Shalala,* 124 F.3d 298, 306 (1st Cir.1997) (citing *Celotex,* 477 U.S. at 322–25, 106 S.Ct. 2548).

Although the ultimate burden of persuasion remains on the moving party and the court should draw all reasonable inferences in favor of the nonmoving party, the nonmoving party will not defeat a properly-supported motion for summary judgment by merely underscoring the "existence of some alleged factual dispute between the parties;" the requirement is that there be a genuine issue of material fact. *Anderson,* 477 U.S. at 247–48, 106 S.Ct. 2505; *Goldman v. First Nat'l Bank of Boston,* 985 F.2d 1113, 1116 (1st Cir. 1993). In addition, "factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. Under Rule 56(e) of the Federal Rules of Civil Procedure, the nonmoving party "may not rest upon the mere allegations or denials of the adverse party's pleading[s], but ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *see also Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. Summary judgment exists to "pierce the boilerplate of the pleadings," *Wynne v. Tufts Univ. Sch. of Med.,* 976 F.2d 791, 794 (1st Cir.1992), and "determine whether a trial actually is necessary." *Vega–Rodriguez v. P.R. Tel. Co.,* 110 F.3d 174, 178 (1st Cir.1997).

In the instant case, the operative facts are not in dispute, all that remains is the application of the relevant law to the facts.

## III.

### Analysis

Common knowledge of the dangers of smoking, together with the applicability of the preemption doctrine, foreclose Plaintiffs' strict liability, negligence, failure-to-warn, consumer expectation, and design-defect claims. Plaintiffs' fraud claim fails because Plaintiffs have failed to offer any evidence on the essential element of reliance. The Article 189 claim cannot prevail because there is no evidence that Defendant fraudulently substituted inferior goods for the cigarettes Decedent purchased. Furthermore, Plaintiffs' claims also fail because there is no evidence to demonstrate that Defendant proximately caused Plaintiffs' injuries.

### A. Common Knowledge

■ In order to succeed on their design-defect and pre–1969 failure-to-warn claims, Plaintiffs must show that ordinary consumers were unaware of the dangers of smoking when Decedent became a smoker, perhaps as early as 1963. *Prado Alvarez v. R.J. Reynolds Tobacco Co.*, 405 F.3d 36, 38–39 (1st Cir.2005); *Cruz–Vargas v. R.J. Reynolds Tobacco Co.*, 348 F.3d 271, 275 (1st Cir.2003) ("[A] manufacturer cannot be liable under either strict liability or negligence for failure to warn of a danger commonly known to the public."); *Guevara v. Dorsey Labs.*, 845 F.2d 364, 367 (1st Cir.1988) ("[T]he duty to warn in general is limited to hazards not commonly known to the relevant public."). Common knowledge "is assessed objectively and, 'despite the nomenclature, it is a technical question involving methods, financing, and sources of research beyond the competence of lay determination, at least when pertaining to history forty or fifty years removed from the time of trial.' " *Prado Alvarez*, 405 F.3d at 39–40 (citing *Cruz–Vargas*, 348 F.3d at 277).

The parties disagree on whether the dangers of smoking were common knowledge when Decedent commenced smoking in 1963. *Docket Document Nos. 53, 67.* Defendant expert Luis Martínez–Fernández' declaration, similar to the declaration he submitted in *Prado Alvarez*, surveys a wide variety of public sources, including magazines, newspapers, educational materials, and health publications dating back to the nineteenth century and mostly originating from Puerto Rico. *Docket Document No. 53, Exh. 14.* Martínez' declaration concludes that during Decedent's lifetime, there existed in Puerto Rico a "broad and increasing public awareness of the health hazards of cigarette smoking, including an awareness of the specific hazard of cancer, and a widespread awareness that cigarette smoking was a 'habit' or an 'addiction' or a practice that proved difficult for many people to quit." *Id.* Martínez cited a 1928 Puerto Rican health education book which observed that "[t]obacco damages the brain and lungs;" a research article from a 1932 Puerto Rican medical journal which concluded that tobacco caused cancer among Puerto Rican citizens; a 1912 Puerto Rican religious publication which declared, "Nicotine is poison. Cigarettes are poison;" a subsequent 1935 edition which noted "[s]ince our earliest grades in school, we have learned that tobacco is harmful to health and child development .... Tobacco is a vice that harms your health and your wallet;" a 1944 edition which described smoking as "ingesting a carcinogen;" a 1945 edition which described tobacco's effect as "disastrous for the throat and lungs;" and a 1954 edition which describes smokers as candidates for "cancer and an early death." *Id.* Martínez also describes the activities of the Puerto Rican Anti–Cancer

League, founded in 1938 with the goal of educating the public on products, including tobacco, which cause cancer. *Id.* Martínez cites articles from the 1940s and 1950s in *El Mundo*, *El Imparcial*, and *El Día*, widely circulated daily newspapers, which investigated the serious health risks involved in nicotine use, including the causal link between tobacco use and cancer. *Id.* Citing at least thirty separate sources from the 1950s, Martínez' declaration states that the wealth of publicly-distributed information on the risk of cancer intensified strongly in the early 1950s, even before Decedent was born, and a decade before he ever began smoking.

Plaintiff expert Luis Díaz–Hernández' report, similar to his reports which were held to be insufficient and unreliable in *De Jesus Rivera v. R.J. Reynolds Tobacco Co.*, 368 F.Supp.2d 148, 153–54 (D.P.R. 2005) and *Ramos v. Philip Morris Inc.*, Civil No. 02–2707(CCC), 2005 WL 2094757, at *2 (D.P.R. Aug. 26, 2005), focuses on the

fact that there was no official, educational tobacco-awareness program in Puerto Rico when Decedent commenced smoking. *Docket Document No. 67, Exh. L.* Plaintiffs' expert report, which is limited in depth and focus, fails to seriously address Defendant's well-supported claim that tobacco was commonly understood to be a dangerous product at the time Decedent commenced smoking.[1]

 Performing our "gatekeeping function of assessing proffered expert evidence," *Prado Alvarez*, 405 F.3d at 40, we find Plaintiffs' expert evidence insufficient. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) ("Relaxation of the usual requirement of first-hand knowledge ... is premised on an assumption that the expert's opinion will have a reliable basis in the knowledge and experience of his discipline."). Specifically, Díaz' research was too narrow, his research was limited and incomplete, and his methodology did

---

1. More than five months after the deadline for submitting his expert report, after he was deposed, after discovery closed, after Defendant submitted its motion for summary judgment, and only about a month before the date set for trial, Plaintiffs proffered a new export report for Díaz. The new report was more than fifty pages longer that Díaz' original report and contained opinions and reliance materials not disclosed during discovery. The new report focused on opinions related to advertising and its effects, and was, in large part, copied verbatim from a variety of sources, some of which appeared not to be properly cited. As there appears to be no justification for the late date at which Díaz' new report and its new opinions were submitted, Federal Rules of Civil Procedure 26 and 37 alone would justify its exclusion. *See* Fed. R.Civ.P. 37(c)(1) (when a party without substantial justification fails to disclose the information required by Rule 26(a) or 26(e)(1), that party "shall not, unless such failure is harmless, be permitted to use as evidence at trial, at hearing, or on a motion any witness or information not so disclosed."); *see also Poulis–Minott v. Smith*, 388 F.3d 354, 358 (1st

Cir.2004) (affirming trial court's exclusion of newly-disclosed expert opinions because such information was not included in the " 'complete statement of all opinions to be expressed,' as required by Rule 26(a).") (quoting *Thibeault v. Square D. Co.*, 960 F.2d 239, 244 (1st Cir.1992)). Nonetheless, even if Díaz' new expert report were to be considered in connection with Plaintiffs' opposition to Defendant's motion for summary judgment, it would not create a genuine issue of material fact because, like his original report, it fails to meet *Daubert* standards. Specifically, Diaz' new opinions focus on advertising, its alleged impact on people, and its effect on people's beliefs about the health effects of smoking. Importantly, Díaz does not even allege that any of the actual cigarette advertisements he referenced were ever seen in Puerto Rico.

Díaz has admitted that he is not an expert in the fields of advertising or warnings and their effects on people. *Docket Document No. 71, Exh. H.* This admitted lack of expertise disqualifies Díaz from offering an expert opinion on the topic of advertising and its effects, and would compel exclusion of his new report under *Daubert*.

not comport with that normally used by professional historians.

First, Díaz admitted that his research was limited to "whether the government informed or gave orientation to the people about smoking cigarettes and whether that would be lethal for their health ... or also if it was addictive." *Docket Document No. 71, Exh. H.* This focus resulted in Díaz ignoring all other avenues of information through which people might receive information that could be said to be "common knowledge," including sources, such as scientific reports, newspapers, radio, television, magazines, religious publications, church, family and friends, civic organizations, and schools, which Díaz himself admitted are sources of "common knowledge." *Docket Document No. 50, Exh J.*

Díaz' research was also limited and admittedly incomplete. In total, he spent less than one-hundred hours researching, and just shortly before he submitted his report in this case, Díaz admitted that his work was incomplete. He conceded, "[w]hat I see is this is a lot more complex than I had imagined at the beginning. I believe this warrant[s] more time, more force and equipment ... How much more time would I, Dr. Díaz, need to do a complete research on this question? Quite a bit. Quite a bit and a good work team." *Id., Exh. E.* According to Díaz, it would, at that point, take him six months of full-time work, with two or three assistants. *Id.* In keeping with his admission that his research was incomplete, Díaz agreed that he had reviewed only a few of the available sources, and even among the sources he did review, his research was very limited. *Id., Exh. B.* Indeed, Díaz' expert report relies almost entirely on two interviews conducted with a pair of smokers: An elderly accountant and a prominent physician, respectively. *Docket Document No. 67, Exh. L.*

Finally, Díaz did not apply professional standards to his work in this case. "When scientists (including social scientists) testify in court, they must bring the same intellectual rigor to the task that is required of them in other professional settings." *Wessmann v. Gittens,* 160 F.3d 790, 805 (1st Cir.1998); *see also Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 152, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). Díaz admitted that he would conduct his professional research differently than he did his research in this case. Specifically, he would have planned and methodically conducted his research and made notes on all of the materials he reviewed. *Docket Document No. 71, Ex H.* He would also have properly cited all of his sources with the "copy, the edition, the publisher, the publishing house, the author et cetera," *id.,* something which he did not do in this case.

In contrast to Díaz' expert report, we find Defendant's expert report convincing, detailed, and well-supported, firmly establishing that by the early 1960s the harmful effects of smoking, including cancer and addiction, were commonly known among people in Puerto Rico. Nor are we alone in this assessment. Earlier this year, the First Circuit, in reviewing a similar report from Martínez and a similarly-limited plaintiffs' expert report, concluded: "[W]e agree with the district court that no reasonable jury confined to the record, could conclude that the general public in Puerto Rico lacked knowledge about the risks of smoking, including lung cancer, by the time decedent started smoking in 1960." *Prado Alvarez,* 405 F.3d at 43–44; *see also De Jesus Rivera,* 368 F.Supp.2d at 154; *Ramos v. Philip Morris Inc.,* Civil No. 02–2707(CCC), 2005 WL 2094757, at *2. The *Prado Alvarez* court noted that Martínez' assertions were as credible as they were when put forward in *Cruz–Vargas,* a case in which the district and appellate courts

also found in the defendant's favor. *Prado Alvarez*, 405 F.3d at 43 (citing 348 F.3d at 278). We are unable to conclude, based on the evidence presented before us, that the First Circuit's finding in *Prado Alvarez* is inapplicable here, particularly when Decedent in the instant case began to smoke after the decedent in *Prado Alvarez*. We, therefore, find that in failing to show a lack of common knowledge, Plaintiffs have offered insufficient evidence to support their failure-to-warn and design-defect claims. Accordingly, the design-defect and failure-to warn claims are dismissed.

**B. Conflict Preemption**

 The doctrine of conflict preemption prevents state laws from being applied to conflict with federal statutes. *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 121, 120 S.Ct. 1291, 146 L.Ed.2d 121 (2000). Conflict preemption occurs where "a federal statute implicitly overrides state law either when the scope of a statute indicates that Congress intended federal law to occupy a field exclusively or when state law is in actual conflict with federal law." *Freightliner Corp. v. Myrick*, 514 U.S. 280, 287, 115 S.Ct. 1483, 131 L.Ed.2d 385 (1995). Congress has foreclosed the removal of tobacco products from the market. *Prado Alvarez v. R.J. Reynolds Tobacco Co.*, 313 F.Supp.2d 61, 72 (D.P.R.2004), *aff'd*, 405 F.3d 36 (1st Cir.2005); *Brown & Williamson Tobacco Corp.*, 529 U.S. at 121, 120 S.Ct. 1291, 146 L.Ed.2d 121 (2000) ("Congress' express policy is to protect commerce and the national economy while informing consumers about any adverse health effects."); 15 U.S.C. § 1331 (1998 & Supp.2004). "[A]llowing tort actions against cigarette manufacturers and sellers for the allegedly negligent act of continuing to make and sell cigarettes would interfere with Congress' policy in favor of keeping cigarettes on the market." *Cruz Vargas v. R.J. Reynolds Tobacco Co.*, 218 F.Supp.2d 109, 118

(D.P.R.2002) (quoting *Insolia v. Philip Morris Inc.*, 128 F.Supp.2d 1220, 1224 (W.D.Wis.2000)); *see also De Jesus Rivera*, 368 F.Supp.2d at 154; *Ramos*, 2005 WL 2094757, at *1; *Jeter v. Brown & Williamson Tobacco Corp.*, 294 F.Supp.2d 681, 685 (W.D.Pa.); *ESTATE OF DUJACK v. BROWN & WILLIAMSON TOBACCO CORP.*, 2001 WL 34133836, *3 (Conn.Super. Nov. 13, 2001). We find that Defendant cannot be liable under Puerto Rico tort law for manufacturing and selling cigarettes.

Plaintiffs' claims that Defendant should be liable for manufacturing and marketing an inherently-dangerous product are, therefore, dismissed.

**C. Fraud Claims**

 Under Puerto Rico law, a plaintiff alleging fraud "must establish (1) that a false representation was made; (2) that the plaintiff reasonably and foreseeably relied thereon; (3) that the plaintiff was injured by his reliance; and (4) that the defendant intended to defraud the plaintiff." *Wadsworth, Inc. v. Schwarz–Nin*, 951 F.Supp. 314, 323 (D.P.R.1996); *see also Prado Alvarez*, 313 F.Supp.2d at 77; *FC Imports, Inc. v. First Nat'l Bank of Boston*, 816 F.Supp. 78, 87 (D.P.R.1993). Defendant claims that the essential element of reliance is lacking because there is no evidence of Decedent ever hearing or seeing any statement from Reynolds. *Docket Document No. 53*. Plaintiffs claim that they need not establish reliance because they rely on the concept of "dolo." *Docket Document No. 67*. In *Prado Alvarez*, the First Circuit soundly rejected the claim that "dolo" was applicable to claims like Plaintiffs'. *Prado Alvarez*, 405 F.3d at 44–45. As Plaintiffs have failed to present any evidence that Decedent ever relied on anything said or done by Reynolds, Plaintiffs' fraud claims are dismissed.

### D. Article 189

■ Article 189 of the Puerto Rico Penal Code prohibits a fraudulent change in the "substance, quality or quantity of the thing he delivers by virtue of an obligation in order to secure an undue profit for himself or a third party." Plaintiffs' claim fails for two reasons. First, to the extent Plaintiffs allege that it is a violation of Article 189 to sell regular cigarettes, that claim is preempted by the doctrine of conflict preemption discussed previously. Second, Plaintiffs offered no evidence that Reynolds fraudulently substituted inferior cigarettes when it manufactured the cigarettes sold to Decedent. Decedent purchased regular Winston cigarettes, and that is what he received. Consequently, Plaintiffs have failed to state a cause of action under Article 189, and those claims are dismissed. *Prado Alvarez,* 313 F.Supp.2d at 77–78, *aff'd,* 405 F.3d at 44–45.

### E. Proximate Cause

The stipulated and admitted facts demonstrate that Decedent was aware of the health risks of smoking because he was warned many times by family and friends. His mother told him he would end up like his father, a smoker and drinker who died of throat cancer in 1968. Decedent's job supervisor told him that cigarettes would take him to the cemetery. When warned Decedent would say not to "meddle" in his life or that he would try to cut down or quit, but never did. Decedent even said that he would rather give up drinking than smoking. Decedent's attitude remained unchanged despite the continuing warnings he received and the labels on cigarette packages, which by the mid–1980s warned that smoking can cause cancer and other serious diseases. "Thus, on this record, warnings appear irrelevant to decedent's decision-making." *Prado Alvarez,* 405 F.3d at 44 (citing *Estate of White v. R.J. Reynolds Tobacco Co.,* 109 F.Supp.2d

424, 435 (D.Md.2000) and *Glassner v. R.J. Reynolds Tobacco Co.,* 223 F.3d 343, 351–52 (6th Cir.2000)). Because Plaintiffs have failed to offer any evidence that any of Defendant's alleged conduct proximately caused Plaintiffs' injuries, their claims are dismissed.

### IV.

### Conclusion

Plaintiffs' pre–1969 failure-to-warn, design-defect, and negligence, strict liability and related claims are either preempted by the conflict preemption doctrine or foreclosed by the fact that tobacco's dangers were common knowledge at the time Decedent began smoking. They further fail due to lack of evidence of proximate cause. Plaintiffs' fraud claims fail due to lack of any evidence of reliance, and Plaintiffs' Article 189 claim similarly fails for lack of substantiating evidence. In accordance with the foregoing, we **GRANT** Defendant's motion for summary judgment. Plaintiffs' claims are **DISMISSED** in their entirety. Judgment to enter accordingly.

**IT IS SO ORDERED.**