# United States Court of Appeals
## For the First Circuit

No. 02-2688

IRENE CRUZ-VARGAS, ELI ROGELIO FIGUEROA-CRUZ
AND LUIS ROGELIO FIGUEROA-CRUZ,

Plaintiffs, Appellants,

v.

R.J. REYNOLDS TOBACCO COMPANY,

Defendant, Appellee,

R.J.R. NABISCO, INC., NABISCO GROUP HOLDINGS,

Defendants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. José Antonio Fusté, U.S. District Judge]

Before

Selya, Circuit Judge,
Coffin, Senior Circuit Judge,
and Howard, Circuit Judge.

Archie Jennings with whom Amarilys Arocho and Anita Hill-Adames were on brief for appellants.
Robert H. Klonoff with whom Salvador Antonetti Zequeira, Luis A. Oliver, Rosalie Irizarry Silvestrini, James R. Johnson, L. Christine Buchanan, Jones Day, and Fiddler, Gonzalez & Rodriguez, P.S.C., were on brief for appellee.

October 28, 2003

**COFFIN, <u>Senior Circuit Judge</u>**.  Appellants are the widow and two sons of Luis Figueroa Serrano, a longtime heavy smoker who collapsed and died suddenly after several years of suffering from hypertension.[1]  They brought this diversity action against appellee R.J. Reynolds Tobacco Company, invoking Puerto Rico tort law and alleging that the cigarette manufacturer was responsible for Figueroa Serrano's death.  The district court granted summary judgment on most of appellants' claims, allowing only the sons' failure-to-warn claims arising prior to July 1, 1969 to go to the jury.  After the jury ruled in favor of the sons, the court granted judgment as a matter of law for Reynolds, concluding that, based on the evidence at trial, the jury was compelled to find that the risks of cigarette smoking were commonly known during the relevant time period.  On appeal, the sons challenge the judgment as a matter of law.  All three appellants challenge the summary judgment ruling to the extent that it found all post-1969 failure-to-warn claims preempted by federal legislation.  Irene Cruz Vargas also challenges the court's ruling that the statute of limitations barred her claims.  We affirm both of the district court's rulings on the basis of common knowledge, making it unnecessary to reach appellants' other arguments.

---

[1]Irene Cruz Vargas is the widow of the decedent; Luis Rogelio Figueroa Cruz and Eli Rogelio Figueroa Cruz are the sons.

## I. **Background**

The following facts are undisputed. The decedent was a native Spanish speaker with no written or verbal English proficiency. He seldom watched television and rarely, if ever, read newspapers or magazines. Figueroa Serrano was a longtime heavy smoker with a documented medical history of hypertension, including several hospitalizations occurring between 1994 and his death on October 18, 1999. At the request of the family, no autopsy was performed.

Appellants filed this suit against Reynolds in October of 2000, alleging that decedent's smoking was responsible for his hypertension, which in turn was a substantial factor in his death. Appellants brought a series of negligence and strict liability claims under Puerto Rico law, including failure to warn and design defect. They furthermore argued that Reynolds failed to comply with its duty, which they alleged to be implicit in federal regulation, to print Spanish language warnings on cigarette packages sold in Puerto Rico.

The district court granted Reynolds summary judgment on all of Irene Cruz Vargas' claims, finding them time-barred. Cruz Vargas v. R.J. Reynolds Tobacco Co., 218 F. Supp. 2d 109, 116 (D.P.R. 2002). With respect to the sons' claims, the district court granted Reynolds' motion for summary judgment on claims of defective design and the inherent dangerousness of tobacco and cigarettes. Id. at 121. The court denied Reynolds' motion as to

the failure-to-warn claims arising prior to July 1, 1969, the date that the amendments to the Federal Cigarette Labeling and Advertising Act went into effect.[2] Id. at 117. The court found failure-to-warn claims based on conduct after July 1, 1969 preempted by the Labeling Act.

The sons proceeded to a jury trial on their remaining claims. Reynolds defended at trial primarily based on evidence that the risks of cigarette smoking were common knowledge prior to 1969, and thus no duty to warn existed. A jury found in favor of both sons, awarding each damages in the amount of $500,000. The district court subsequently granted Reynolds' motion for judgment as a matter of law, under Fed. R. Civ. P. 50(a), finding that appellants failed to offer any evidence demonstrating that the ordinary consumer lacked knowledge of the health risks and addictive nature of smoking. The district court held that the jury was not entitled to reject the unimpeached, uncontradicted testimony of Reynolds' expert witness, who stated his opinion that the Puerto Rican public was aware of such hazards prior to July 1, 1969.

Appellants allege the district court's action was improper because the evidence presented by Reynolds was susceptible to conflicting inferences. In addition, they contest summary judgment

---

[2]The Labeling Act mandated cautionary warnings on cigarette packages beginning in 1965. The amendment, effective July 1, 1969, both strengthened the language of the warnings and included preemptive language broader in scope than that of the original act. See Cipollone v. Liggett Group, Inc., 505 U.S. 504 (1992).

on two grounds: first, that the court erred in determining that the claims accrued at the time appellants learned of Figueroa Serrano's injuries, rather than on the actual date of his death; second, that it further erred in refusing to find that the absence of warnings in Spanish rendered the required warnings of the Labeling Act ineffectual.

## II.  Judgment as a Matter of Law

We review the grant of judgment as a matter of law de novo. Hochen v. Bobst Group, Inc., 290 F.3d 446, 453 (1st Cir. 2002). We examine the record as a whole, reading the evidence in the light most favorable to the jury verdict. Reeves v. Sanderson Plumbing Prod., 530 U.S. 133, 150 (2000).  Although we may not weigh the credibility of witnesses, id., we assume the veracity "of any admissions made and stipulations entered into by the party opposing the Rule 50 motion...as well as any evidence derived from disinterested witnesses that has not been contradicted or impeached."  Quintana-Ruiz v. Hyundai Motor Corp., 303 F.3d 62, 69 (1st Cir. 2002)(quoting Alvarez-Fonseca v. Pepsi Cola of P.R. Bottling Co., 152 F.3d 17, 23 (1st Cir. 1998)).  Only if "applying these standards, the evidence does not permit a reasonable jury to find in favor" of appellants will we affirm the district court. Brennan v. GTE Gov't Systems Corp., 150 F.3d 21, 26 (1st Cir. 1998).

## A.  Evidence Regarding Common Knowledge

This case calls for us to evaluate application of the common knowledge doctrine in the context of tobacco litigation.  The doctrine stems from the principle that a manufacturer cannot be held liable under either strict liability or negligence for failure to warn of a danger commonly known to the public.  See, e.g., Guevara v. Dorsey Labs., Div. of Sandoz, Inc., 845 F.2d 364, 367 (1st Cir. 1988) ("The duty to warn in general is limited to hazards not commonly known to the relevant public."); Aponte Rivera v. Sears Roebuck, Inc., 44 P.R. Offic. Trans. 7, 144 D.P.R. 830 (1998) ("[A] manufacturer need not warn of a hazard if the average consumer ordinarily has knowledge of the dangers of the product.").

To state a claim for negligence under the law of Puerto Rico, a plaintiff must prove that "(1) defendant owed a duty to prevent the harm by conforming to a reasonable standard of conduct; (2) defendant breached that duty through a negligent act or omission; and (3) the negligent act or omission caused the plaintiff's harm." Tokio Marine & Fire Ins. Co. v. Grove Mfg. Co., 958 F.2d 1169, 1171 (1st Cir. 1992).  See also 31 L.P.R.A. § 5141 (1991).  Puerto Rico has also adopted, by judicial act and with a slight modification, the strict liability principles embodied in section 402A of the Restatement (Second) of Torts.  Perez-Trujillo v. Volvo Car Corp., 137 F.3d 50, 53 n.5 (1st Cir. 1998) (clarifying that claimant in Puerto Rico must show the product was "unsafe" rather than

-6-

"unreasonably dangerous"); <u>Rivera Santana</u> v. <u>Superior Packaging, Inc.</u>, 1992 P.R.-Eng. 754830 *3 n.4, 132 D.P.R. 115 (1992) (noting that Puerto Rico has adopted U.S. common law products liability principles to "fill a gap in our body of laws").

A products liability plaintiff alleging failure to warn must prove "(1) the manufacturer knew, or should have known of the risk inherent in the product; (2) there were no warnings or instructions, or those provided were inadequate; (3) the absence of warnings made the product inherently dangerous; (4) the absence of adequate warnings or instructions was the proximate cause of plaintiff's injury." <u>Aponte Rivera</u>, 44 P.R. Offic. Trans. at 6. Under the common knowledge doctrine, however, a defendant neither breaches a duty nor causes the product to be inherently dangerous when the allegedly omitted warning concerns a danger of which the public is well aware.

In an ordinary case on summary judgment or judgment as a matter of law, plaintiffs point to evidence suggesting a genuine dispute of a material fact. <u>See</u> <u>Anderson</u> v. <u>Liberty Lobby, Inc.</u>, 477 U.S. 242, 251-52 (1986) (standard for judgment as a matter of law mirrors that of summary judgment, and thus to withstand a motion under either inquiry, the evidence must indicate "sufficient disagreement to require submission to a jury"). In other cases in which common knowledge was at issue, plaintiffs have successfully defended against summary judgment motions by pointing to evidence

suggesting such a genuine dispute. See, e.g., Tompkin v. American Brands, 219 F.3d 566, 568-70 (6th Cir. 2000) (plaintiff's expert reviewed periodicals, polls, and industry and government reports from the relevant time period, concluding that smokers were not adequately informed of the risks); Little v. Brown & Williamson Tobacco Corp., 243 F. Supp. 2d 480, 492-495 (D.S.C. 2001) (plaintiff's "sample authorities," including journals, reports and polls, created a jury question regarding common knowledge). Appellants here take a different approach, contending that they did not have a burden to produce any evidence at all. The crux of appellants' entreaty on appeal is that neither the strict liability nor the negligence claim requires any affirmative showing, and thus the burden rested entirely on Reynolds. Whether or not this is a correct view of the law, after searching the record we have found no evidence which supports appellants' allegations that there was a lack of common knowledge and thus we are compelled to find that Reynolds met its burden in any event.

Appellants argue that Reynolds' experts presented conflicting testimony on common knowledge, which permitted the jury to reach the conclusion it did. This contention, however, is not borne out by review of the trial transcript. Reynolds' defense consisted of three witnesses. The testimony of the first two had no relevance to the specific common knowledge inquiry. Dr. Herman Melavet, a medical internist, testified as to the dispute in the medical

community as to the precise causal link, if any, between smoking and hypertension. He also suggested that the decedent may have died from a dissecting aneurysm.[3] The testimony of Dr. Juan Fumero, a psychiatrist, concerned contemporary psychiatric understanding of nicotine dependence.

Appellants extract a discrete portion from the testimony of Dr. Fumero in support of their argument that the jury was presented with contradictory evidence undermining common knowledge. Appellants fault Dr. Fumero for his opinion that regardless of the term used to describe a smoking habit, be it "addiction," "nicotine dependence," or "substance abuse," an individual committed to quitting will be able to do so. But to say that one can abandon a habit sheds no light on whether the prevalence of the habit was a matter generally known.[4] Similarly, Dr. Melavet's testimony that

---

[3]As explained above, no autopsy was performed and thus the cause of death cannot be precisely ascertained.

[4]Appellants highlight the following portion from Dr. Fumero's testimony on direct examination:

> Q: Is there anything in cigarettes that would render a person unable to understand that he is smoking and to make a decision to quit?
>
> A: No, nothing at all.
>
> Q: There is a term addiction that has been bandied about here which means that a person is not competent to change their behavior that he or she is said to be addicted to?
>
> A: No, you can call it addiction; you can call it nicotine dependence; you can call it substance abuse. It doesn't matter how you call it, there is nothing in

cigarette smoking did not cause hypertension says nothing about the state of common knowledge.

Only Professor Luis Martinez, an expert in Carribean social history, testified on the precise issue of common knowledge, and he concluded by stating his opinion that "the average consumer in Puerto Rico during the 1950's, during the 1960's" was aware both of health risks, such as cancer and cardiovascular disease, and that "smoking was or could be difficult to quit." Appellants contend that the jury permissibly rejected Martinez' testimony as biased and incredible. Appellants' bias argument relies on the U.S. Supreme Court's decision in Sonnentheil v. Christian Morlein Brewing Co., 172 U.S. 401 (1899), which held that "the mere fact that a witness is interested in the result of the suit is deemed sufficient to require the credibility of his testimony to be submitted as a question of fact." Id. at 408. Case law in this circuit, however, clarifies that mere payment to an expert by a party does not raise a question of bias. Quintana-Ruiz, 303 F.3d at 76 (finding that witnesses' status as "paid outside experts" did not gainsay credibility).[5]

---

it that can impair you from quitting if you choose to quit.

[5]Appellants' attempt to bring Martinez' testimony under the rubric of Sonnentheil by alleging a "fraudulent tinge" finds no support in the record.

-10-

Martinez' testimony is furthermore neither improbable nor contradicted, thus falling under the established principle that "testimony concerning a simple fact, capable of contradiction, not incredible, and standing uncontradicted, unimpeached, or in no way discredited by cross-examination, must be permitted to stand." Id. at 75 (quoting Chicago, Rock Island & Pac. Ry. Co. v. Howell, 401 F.2d 752, 754 (10th Cir. 1968)). Martinez' research followed an accepted method of historical analysis and drew on a breadth of sources — such as newspapers, polls, surveys, school curricula, films, and reports by various public interest organizations — contemporaneous with the time period at issue in the case.[6] Given his explanation of the sources and method, Martinez' opinions are not improbable or unbelievable, and the transcript reveals no inconsistencies in his direct testimony.

Cross examination neither brought to light any contradictions undermining Martinez' opinion nor revealed information suggesting

[6]In total, Professor Martinez' presentation included 58 slides summarizing his sources. A sampling of the sources on addiction and health risks, all dating from the 1950s and 1960s, includes: articles from the Spanish language Reader's Digest, including "Nicotine, the Smoking Enigma," "How I Quit Smoking," "Dreadful Lung Cancer on the Rise;" a 1961 article in the San Juan Star titled "Two City Studies Show Death Rate Higher for Smokers;" two editorial cartoons from the daily newspapers El Mundo and El Imparcial (one relating to addiction, the other to health risks); an ad in El Imparcial about the difficulties of quitting, an article in El Mundo lamenting "how difficult it is to quit!" and several other El Mundo articles discussing a major study of the risks of smoking, completed in 1957, that spurred increased government interest in further investigation. He also testified to extensive coverage in newspapers following the release in 1964 of a key Surgeon General's report on smoking hazards.

a lack of common knowledge. In an effort to discredit Martinez' sources, appellants' counsel suggested that the semantical distinction between a "poll" and a "survey" had factual significance. Martinez, however, effectively explained his understanding of the difference between the two without raising doubt as to the validity of either, and further clarified the legitimacy of population sampling in the surveys and polls on which he relied. Counsel also probed issues regarding the circulation and availability of newspapers and magazines in Figueroa Serrano's neighborhood in particular, but the court sustained an objection to this line of questioning as improperly suggesting that common knowledge has a subjective component.[7]

In a final effort to salvage the verdict, appellants rely on an instruction that they claim allowed the jury to disregard Martinez' testimony. The jury was told that "[y]ou should consider each expert opinion received in evidence and give it such weight as you think it deserves. You should bear in mind that the opinions

---

[7]Courts construing Section 402A of the Restatement (Second) of Torts, which is applicable here, have found the determination of common knowledge to be purely objective. See e.g. McLennan v. American Eurocopter Corp., 245 F.3d 403, 428 (5th Cir. 2001) ("Whether information about a risk is common knowledge is an objective inquiry and the user's knowledge is not dispositive on the issue."); Insolia v. Philip Morris, Inc., 216 F.3d 596, 599 (7th Cir. 2000) (section 402A involves an objective test "and is not dependent upon the knowledge of the particular injured consumer"); Little, 243 F. Supp. 2d at 492 (D.S.C. 2001)("[Plaintiff's] knowledge or lack of knowledge concerning the dangers of cigarettes is irrelevant for purposes of this analysis.").

of experts do not bind the Court, and they do not bind you." Construing this language as carte blanche for a total rejection of Martinez' testimony is a misreading of our precedent. For it makes clear that the jury could not reject the substantive, uncontradicted and unimpeached evidence upon which Martinez' opinion was based. See C. Wright & A. Miller, 9A Federal Practice and Procedure §2527, at 286 n.9 (1995 & Supp. 2003) (citing Quintana-Ruiz, 303 F.3d at 75, as holding that the jury must accept the uncontradicted and unimpeached testimony of even an interested witness). While the instruction permitted the jury, in the event of conflicting evidence, to reject Professor Martinez' resolution of the conflict, it did not allow the jury to reject the only evidence presented on the issue for no apparent reason.

Like the testimony in Quintana-Ruiz, Martinez' presentation was not "improbable, inconsistent, or otherwise facially unbelievable." Because Martinez' testimony as to the nature, content and variety of dissemination of information about the perils of smoking was uncontradicted and suffered no obvious defect inviting impeachment, the jury had no basis to find other than that common knowledge of smoking's hazards existed in Puerto Rico before July 1, 1969.[8]

---

[8]Our references to common knowledge are not without limit of time. We hold only that the evidence at trial required the jury to find that common knowledge existed at least by the mid-1960s, the earliest time at which decedent may have begun smoking.

-13-

## C. **Exclusion of the 1988 Surgeon General's Report**

To the extent appellants' case lacked critical evidence on the common knowledge issue, appellants argue this stemmed from refusal of the district court to admit a 1988 Surgeon General's report on the addictiveness of nicotine. When pressed by the judge regarding the relevance of the 1988 report to claims prior to July 1, 1969, appellants' counsel offered only that "in regard to the issue regarding addiction, Your Honor, the matter concerning [decedent] is that over the years he did become addicted in 1988. It settled that issue." Appellants urge us to consider additional remarks in the proffer which merely indicated that in 1964 addiction and dependence were used interchangeably and that the 1988 report standardized the definition.[9] They now claim the report demonstrates that the addictive nature of smoking could not have been common knowledge until at least 1988. Contrary to appellants'

---

[9]Counsel's complete proffer was:
"Well in regard to the issue regarding addiction, Your Honor, the matter concerning Mr. Luis Serrano is that over the years he did become addicted in 1988. It settled that issue. What counsel is speaking of, there was a change in the definition of the Surgeon General's Report from 1964 regarding addiction versus defendant's dependence. Sometimes they used it interchangeably back in 1964. The World Health Organization indicated that they believed that cigarette smoking was addictive or people became dependent upon it over those years. They asked for some more studies, and they came out with the report in 1988."

-14-

argument, these further remarks by no means signify that common knowledge did not exist until 1988.

Moreover, counsel's offer of proof did not reveal that this was the intended purpose behind admitting the report.  The issue was thus not preserved.  See Clausen v. Sea-3, Inc., 21 F.3d 1181, 1194 (1st Cir. 1994) (quoting Tate v. Robbins & Meyers, Inc., 790 F.2d 10, 12 (1986) ("[I]f evidence is excluded because it is inadmissible for its only articulated purpose, the proponent of the evidence cannot challenge the ruling on appeal on the ground that the evidence could have rightly been admitted for another purpose." (citations omitted)).  The district court properly perceived the potential for jury confusion, given that the trial was limited to claims prior to July 1, 1969.  Counsel had the opportunity to allay such concerns and enunciate a specific relevant use for the report, but failed to do so.[10]

In conclusion, we affirm the district court's grant of judgment as a matter of law in favor of Reynolds.  Based on the evidence presented, no reasonable jury could have found a lack of common knowledge during the relevant time period regarding the health hazards and habit-forming nature of cigarettes.

---

[10]Despite appellants' urging, the decision in Perez-Trujillo v. Volvo Car Corp., 137 F.3d 50 (1st Cir. 1998), in which we vacated the district court's exclusion of eyewitness testimony, does not suggest an opposite result.  Exclusion of eyewitness testimony contemporaneous in time with the exact events at issue is distinguishable from exclusion of this report on general subject matter published nearly twenty years after the relevant time period in the case.

### III.  **Demand for New Trial on Post-1969 Claims**

Appellants also appeal from the grant of summary judgment in favor of Reynolds on post-1969 failure-to-warn claims, which the district court  found  preempted by the terms of the Labeling Act. Cruz Vargas, 218 F. Supp. 2d at 117.  As with judgment as a matter of law, we review the district court's grant of summary judgment de novo and draw all reasonable inferences in favor of the nonmoving party.  Sparks v. Fidelity Nat'l. Title Ins. Co., 294 F.3d 259, 265 (1st Cir. 2002).  Furthermore, we may affirm the district court "on any ground revealed by the record."  Morales-Vallellanes v. Potter, 339 F.3d 9, 18 (1st Cir. 2003).

Appellants offer the intriguing suggestion that our preemption analysis consider the "linguistic particularity" of Puerto Rico in giving effect to the clearly expressed Congressional intent that warnings required by the Labeling Act be deemed adequate to inform the public of cigarettes' hazards.  See 15 U.S.C. §1331(1) (1998). Reynolds, on the other hand, points to case law analyzing the preemptive scope of the Labeling Act and argues that any state law tort action based on inadequate package warnings falls under the rubric of these decisions.  See Medtronic Inc. v. Lohr, 518 U.S. 470, 488 n.9 (1996) (text of the Labeling Act "specified the precise warning to smokers that Congress deemed both necessary and sufficient"); Cipollone v. Liggett Group Inc., 505 U.S. 504, 524 (1992) (failure-to-warn claims preempted to the extent such claims

require a showing that advertisement or promotion of cigarettes required "additional, or more clearly stated, warnings"); <u>Palmer</u> v. <u>Liggett Group, Inc.</u>, 825 F.2d 620, 629 (1st Cir. 1987) (describing "state tort liability" as "seriously disruptive to the congressionally calibrated balance of national interests"). We need not decide, however, if appellants' argument defeats preemption because we have already determined that the jury was required to believe Reynolds' uncontradicted and unimpeached testimony on the existence of common knowledge in Puerto Rico prior to July 1, 1969. It is thus axiomatic that proof of such common knowledge also stymies all subsequent failure-to-warn claims.[11]

For the foregoing reasons, we affirm the district court's grant of summary judgment and judgment as a matter of law in favor of Reynolds.

<u>Affirmed</u>.

---

[11]In any event, we suggest that the argument regarding the language of warnings is best entertained by Congress, and not the courts. <u>See</u> <u>Aponte Rivera</u>, 44 P.R. Offic. Trans. 10, 144 D.P.R. 830 (P.R. 1998),(Negrón Garcia, J., dissenting) ("[I]t is incumbent upon the Legislative Assembly and the Secretary of Health, not upon this Court, to make the pertinent standardization [of the language of warnings], to set it forth in a statute or regulation, and to define what are sufficient instructions and warnings."); <u>Ramirez</u> v. <u>Plough</u>, 6 Cal. 4th 539, 550 (1994) ("Defining the circumstances under which warnings or other information should be provided in a language other than English is a task for which legislative and administrative bodies are particularly well suited.").