**Walter Jimenez CARRELO and Jennifer Gonzalez Asencio, Plaintiffs,**

v.

**ADVANCED NEUROMODULATION SYSTEMS, INC.; St. Jude Medical Puerto Rico, LLC, Defendants.**

Civ. No. 09–1671(PG).

United States District Court, D. Puerto Rico.

March 8, 2011.

305

Jorge M. Izquierdo–San–Miguel, Izquierdo–San Miguel Law Office, San Juan, PR, for Plaintiffs.

Raul M. Arias–Marxuach, Alejandro J. Cepeda–Diaz, McConnell Valdes, San Juan, PR, for Defendants.

## OPINION AND ORDER

JUAN M. PEREZ–GIMENEZ, District Judge.

Co-defendants Advanced Neuromodulation Systems and St. Jude Medical Puerto Rico, LLC (collectively, "Defendants") have presented a motion for partial summary judgment (Docket No. 38). Defendants posit that the product liability claims presented by plaintiffs Walter Jimenez Carrelo ("Jimenez Carrelo") and Jennifer Gonzalez Asencio (collectively, "Plaintiffs") are barred pursuant to 21 U.S.C. § 360k(a). The Court deems Defendants' motion to be unopposed due to Plaintiffs' failure to submit their opposition in a timely manner (Docket No. 44). After a close examination of the applicable statutes and caselaw, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' motion for partial summary judgment.

## I. Background

### A. Procedural Background

Plaintiffs filed the instant suit on July 15, 2009. Plaintiffs then submitted their amended complaint on August 26, 2009. Plaintiffs' amended complaint posits that St. Jude Medical Puerto Rico, LLC was grossly negligent in erroneously instructing Jimenez Carrelo that the EON Rechargeable Impulse Generator ("EON IPG") device implanted in his body did not need charging. Plaintiffs also allege that Jimenez Carrelo did not receive a charging system for the EON IPG after surgery. Plaintiffs further state that Advanced Neuromodulation Systems failed to properly train and instruct St. Jude Medical Puerto Rico, LLC on the proper distribution and use of the device. In addition to these negligence claims, Plaintiffs advance a series of product liability claims: (1) the EON IPG was defective due to failure to warn; (2) the device was defectively manufactured; and (3) the device was defectively designed for not protecting against lead contact failures. Lastly, Plaintiffs argue that their product liability claims are not preempted by federal law.

On November 2, 2010, Defendants filed a motion in limine to strike Plaintiffs' expert's preliminary report and expected testimony (Docket No. 37), as well as a motion for partial summary judgment (Docket No. 38) along with a statement of undisputed material facts (Docket No. 39). Plaintiffs filed a motion requesting an extension of time to answer both the motion in limine and the motion for summary judgment on November 29, 2010 (Docket No. 39). The Court granted Plaintiffs' motion, despite the fact that said motion was not timely filed and ordered that Plaintiffs submit their responses by December 15, 2010 (Docket No. 42). Plaintiffs failed to submit any response and the Court deemed Defendants' motion in limine and motion for partial summary judgment to be unopposed on January 11, 2011 (Docket No. 44).

### B. Factual Background

The following factual narrative is derived from facts that are deemed uncontested by the Court because they were included in the motion for summary judgment and were agreed upon or properly supported by the evidence and not genuinely opposed. The Court emphasizes only facts considered material and non-repetitive.

Jimenez Carrelo was implanted with an EON IPG on February 12, 2008. The purpose of the implant was to aid Jimenez Carrelo in managing back pain caused by injuries received from a car accident. Jimenez Carrelo received the patient programmer, a device that allows the patient to control stimulation, the day after surgery.

In the summer of 2008, Plaintiffs moved to Florida. On February 9, 2009, Jimenez

Carrelo visited Puerto Rico and met with a St. Jude Medical Puerto Rico, LLC representative. The EON IPG device was recharged and programmed on February 10, 2009. Jimenez Carrelo also received a charging system on the same date.

The EON IPG is a Class III medical device subject to the Food and Drug Administration's ("FDA") Pre–Market Approval Process ("PMA").[1] The EON IPG implanted in Jimenez Carrelo is manufactured, distributed and marketed by Advanced Neuromodulation Systems.

The EON IPG device implanted in Jimenez Carrelo was subjected to an interrogation, a diagnostic test, and three of the sixteen leads were not working appropriately due to impedance problems. This diagnostic examination was conducted by St. Jude on April 1, 2009.

Beyond these factual stipulations, the parties disagree as to whether Jimenez Carrelo received a charging system for the EON IPG after surgery and whether he was told that the device did not require charging. Plaintiffs allege that Jimenez Carrelo visited Puerto Rico on February 9, 2009, and learned for the first time that the EON IPG has three months of battery life without reprogramming, after which it must be recharged with a device that he never received (Docket No. 23). Plaintiffs further posit that in March, 2009 a St. Jude Medical representative in Orlando, Florida concluded that the EON IPG needed to be replaced and St. Jude Medical Puerto Rico, LLC refused to cover Jimenez Carrelo's surgery or hospital bills. Defendants vigorously disagree with these allegations and posit that Plaintiffs' claims are expressly preempted by federal law. For the reasons that follow, the motion is partially granted.

## II. Discussion

### A. Motion for Summary Judgment Standard

A motion for summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure, which entitles a party to judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party." *Prescott v. Higgins*, 538 F.3d 32, 40 (1st Cir.2008) (internal citations omitted); *Calero–Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 19 (1st

---

1. Class III devices are required to obtain premarket approval to provide reasonable assurance of its safety and effectiveness. 21 U.S.C. § 360c(a)(1)(C). "Premarket approval is a rigorous process." *Riegel v. Medtronic, Inc.*, 552 U.S. 312, 317–318, 128 S.Ct. 999, 169 L.Ed.2d 892 (2008) (citing *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 477, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996) (internal citations omitted)). "A manufacturer must submit what is typically a multivolume application." *Id.* (citing FDA, Device Advice–Premarket Approval (PMA) 18, http://www.fda.gov/cdrh/devadvice/pma/printer.html.). The premarket approval process includes "among other things, full reports of all studies and investigations of the device's safety and effectiveness that have been published or should reasonably be known to the applicant; a full statement of the device's components, ingredients, and properties and of the principle or principles of operation; a full description of the methods used in, and the facilities and controls used for, the manufacture, processing, and, when relevant, packing and installation of, such device; samples or device components required by the FDA; and a specimen of the proposed labeling." *Id.* (citing 21 U.S.C. § 360e(c)(1)).

"The FDA spends an average of 1,200 hours reviewing each application ..." *Riegel*, 552 U.S. at 318, 128 S.Ct. 999 (citing *Lohr*, 518 U.S. at 477, 116 S.Ct. 2240). The FDA only grants premarket approval "if it finds there is a reasonable assurance of the device's safety and effectiveness." *Id.* (citing 21 U.S.C. § 360e(d))(internal citations omitted).

Cir.2004) (stating that an issue is genuine if it could be resolved in favor of either party); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In order for a disputed fact to be considered material it must have the potential "to affect the outcome of the suit under governing law." *Sands v. Ridefilm Corp.,* 212 F.3d 657, 660–661 (citing *Liberty Lobby, Inc.,* 477 U.S. at 247–248, 106 S.Ct. 2505); *Prescott,* 538 F.3d at 40 (citing *Maymi v. P.R. Ports Auth.,* 515 F.3d 20, 25 (1st Cir.2008)).

The ethos of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *DeNovellis v. Shalala,* 124 F.3d 298, 306 (1st Cir.1997) (citing FED.R.CIV.P. 56(e) advisory committee note to the 1963 Amendment). The moving party must demonstrate the absence of a genuine issue as to any outcome-determinative fact on the record. *Shalala,* 124 F.3d at 306. Upon a showing by the moving party of an absence of a genuine issue of material fact, the burden shifts to the nonmoving party to demonstrate that a trier of fact could reasonably find in his favor. *Id.* (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). The nonmovant may not defeat a "properly focused motion for summary judgment by relying upon mere allegations," but rather through definite and competent evidence. *Maldonado–Denis v. Castillo–Rodriguez,* 23 F.3d 576, 581 (1st Cir.1994). The nonmovant's burden thus encompasses a showing of "at least one fact issue which is both 'genuine' and 'material'." *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 48 (1st Cir. 1990); *see also Suarez v. Pueblo Int'l,* 229 F.3d 49, 53 (1st Cir.2000) (stating that a nonmovant may shut down a summary judgment motion only upon a showing that a trialworthy issue exists). As a result, the mere existence of "some alleged factual dispute between the parties will not affect an otherwise properly supported motion for summary judgment." *Liberty Lobby, Inc.,* 477 U.S. at 247–248, 106 S.Ct. 2505. Similarly, "summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Medina–Muñoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990).

When considering a motion for summary judgment, the Court must examine the facts in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor in order to conclude whether or not there is sufficient evidence in favor of the nonmovant for a jury to return a verdict in its favor. *Rochester Ford Sales, Inc. v. Ford Motor Co.,* 287 F.3d 32, 38 (1st Cir.2002). The Court must review the record as a whole and refrain from engaging in an assessment of credibility or weigh the evidence presented. *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 135, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (internal citations omitted). The burden placed upon the nonmovant is one of production rather than persuasion. In other words, in weighing a nonmovant's opposition to summary judgment the Court should not engage in jury-like functions related to the determination of credibility.

In the instant case, the Court has deemed Defendants' motion for partial summary judgment to be unopposed due to Plaintiffs' failure to respond in a timely manner. However, this does not mean that the Court may merely grant Defendants' motion. An unopposed motion for summary judgment should only be granted if the movant's statement of uncontested facts and other evidentiary facts of record show that the party is entitled to summary judgment. *Torres–Rosado v. Rotger–Sabat,* 335 F.3d 1, 4 (1st Cir.2003).

## B. Federal Preemption

The EON IPG in dispute is a Class III medical device under the FDA's regulatory scheme. The Medical Device Amendments of 1976 ("MDA"), 21 U.S.C. § 360k(a), to the Food, Drug and Cosmetic Act ("FDCA"), 21 U.S.C. § 301 et seq., established various levels of oversight for medical devices, depending on their risks. *Riegel,* 552 U.S. at 316, 128 S.Ct. 999 (2008). More specifically, the MDA included the express preemption of product liability claims against Class III medical devices.[2] 21 U.S.C. § 360k(a).

In *Riegel,* the Supreme Court addressed whether the MDA preemption provision bars state-law tort actions that are based upon negligence, breach of warranty and strict liability. The Supreme Court held that such claims were preempted by the MDA. *Riegel,* 552 U.S. at 329, 128 S.Ct. 999. The Supreme Court concluded that the PMA process constitutes a federal safety review for specific medical devices that imposes federal requirements within the meaning of the MDA. *Id.* at 322–23, 128 S.Ct. 999. As a result, the Supreme Court determined that state-law tort suits would interfere with the strict requirements imposed on Class III device manufacturers via the PMA process. *Id.* at 330, 128 S.Ct. 999.

However, the *Riegel* decision did not close all avenues for a plaintiff seeking to bring forth a state-law tort action against the manufacturer of a Class III medical device. The Supreme Court held that the MDA does not bar a state from imposing a damages remedy for a claim that is premised on a violation of federal law because the state duties in such a case parallel rather than add to federal requirements. *Riegel,* 552 U.S. at 330, 128 S.Ct. 999 (citing *Lohr,* 518 U.S. at 495, 116 S.Ct. 2240). In other words, a Class III medical device manufacturer is protected from liability to the extent that the manufacturer has complied with federal law. *Bausch v. Stryker Corp. Inc.,* 630 F.3d 546, 552 (7th Cir.2010). "In such a lawsuit, the plaintiff would seek damages for the violation of federal, and not state law-duties that the Court referred to as parallel to FDA requirements." *Ilarraza v. Medtronic, Inc.,* 677 F.Supp.2d 582, 583 (E.D.N.Y.2009) (citing *Riegel,* 128 S.Ct. at 1011) (internal citations omitted).

■ Thus, state-law claims against Class III medical manufacturers are effectively preempted. However, there exists a narrow back door through which a plaintiff may still advance state-law tort claims as a parallel action, if the claim alleges that a manufacturer failed to comply with existing federal regulations, such as those established by a device's PMA. *See Riegel,* 552 U.S. at 330, 128 S.Ct. 999; *In re Medtronic, Inc. Sprint Fidelis Leads Products Liability Litigation ("Medtronic Leads"),* 592 F.Supp.2d 1147, 1152 (D.Minn.2009).

■ In *Riegel,* the Supreme Court established a two-step test in order to determine whether or not the state-law claim is preempted. The first step requires consideration of whether a Class III medical device PMA imposes federal requirements. *Riegel,* 552 U.S. at 322–323, 128 S.Ct. 999. The Riegel decision established that any

**2.** The text of the statute reads: "Except as provided in subsection (b) of this section, no State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement— (1) which is different from, or in addition to, any requirement applicable under this chapter to the device, and (2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter." 21 U.S.C. § 360k(a).

Class III device receiving PMA approval by the FDA will satisfy this first prong of the test. *Id.* at 322, 128 S.Ct. 999. Secondly, it must be determined whether the state-law claims would impose requirements that are different from or in addition to the approved device PMA. 21 U.S.C. § 360k(a)(1); *Riegel,* 552 U.S. at 322–323, 128 S.Ct. 999.

Post-*Riegel,* a number of federal courts have been called on to determine whether state-law claims were preempted by Section 360k(a). *Medtronic Leads,* 592 F.Supp.2d at 1152 (D.Minn.2009) (collecting cases); *see also Covert v. Stryker Corp.,* No. 1:08CV447, 2009 WL 2424559, at *5 (M.D.N.C. Aug. 5, 2009) (collecting cases). These cases evidence the present struggle amongst district courts to determine whether state-law claims are preempted by the MDA in the Class III medical device context. The Court recognizes a tendency towards a broad application of the MDA that often results in the preemption of state-law claims. *Covert,* 2009 WL 2424559, at *5. In fact, Section 360k(a) has been broadly applied, resulting in the preemption of negligence and strict liability product liability claims. *Walker v. Medtronic, Inc.,* No. 2:07–00317, 2010 WL 4822135, at *4, 2010 U.S. Dist. LEXIS 125103 at *12 (S.D.W.V. Nov. 24, 2010) (providing an extensive list of cases where Section 360k(a) has been found to preempt product liability claims).

In this context, a recent decision by the Northern District of Texas is of particular relevance because it found that preemption did not apply pursuant to Section 360k(a). *Purcel v. Advanced Bionics,* No. 3:07–CV–1777–M, 2008 WL 3874713 at *1 (N.D.Tex. Aug. 13, 2008). In *Purcel,* the plaintiff successfully advanced a parallel claim by alleging that a particular malfunction causing the plaintiff's injury was the result of the defendant's unapproved modification of a component part of the regulated device. *Id.* The court noted that the plaintiffs' success was premised on directing the court's attention to: "(1) inspection reports and warning letters issued by the FDA to ... [the defendant], documenting federal violations between 2001 and 2005 focusing on moisture problems; (2) a voluntary recall issued by ... [the defendant] concerning all ... devices that contained the component in question; and (3) an FDA enforcement action against ... [the defendant] and its President and CEO for violations of CGMP and premarket approval requirements as a result of the company's failure to notify the FDA of the change in supplier and failing to validate the continued safety and effectiveness of the ... [device]." *Horowitz v. Stryker Corp.,* 613 F.Supp.2d 271, 282 (E.D.N.Y.2009) (citing *Purcel,* 2008 WL 3874713 at *1–2) (citations omitted). Thus, the *Purcel* court concluded that the plaintiff's claims were not preempted because they were predicated on violations of federal law.

■ The District Court for the Eastern District of New York evaluated similar claims, albeit reaching a different conclusion, in *Horowitz.* 613 F.Supp.2d at 282. The *Horowitz* court concluded that plaintiffs had failed to present a parallel claim because the plaintiff did not demonstrate a cognizable link between the defendant's federal violation and the plaintiff's injury. *Id.* (stating that merely alleging specific facts that include FDA warning letters and product recalls is insufficient to show that a device failed to comply with federal standards without also showing a cognizable link between the injury and the alleged violation). In other words, plaintiff's allegation of a federal violation is insufficient to establish a parallel claim without presenting evidence that establishes that the alleged federal violations was the cause of the plaintiff's injury.

In *Parker v. Stryker Corp.*, the Colorado District Court also rejected a parallel claim argument because the plaintiff only advanced general allegations that the Class III medical device was unreasonably dangerous and defective. 584 F.Supp.2d 1298, 1301 (D.Colo.2008). In *Parker*, the plaintiff relied on warning letters to allege that the defendant failed to comply with federal regulations, however the court found that "plaintiff does not allege that the failure to comply with these particular regulations rendered the Trident System defective." *Id.* at 1301–1302. The *Parker* court concluded that "[a]lthough such a claim appears to constitute the type of parallel claim the *Riegel* court found to be outside the preemptive reach of section 360k, nowhere does plaintiff's complaint provide any factual detail to substantiate that crucial allegation." *Id.* at 1302.

The District Court of New Jersey also concluded that the plaintiff's manufacturing defect claim should be dismissed because the plaintiff failed "to support the bald allegation that the Trident fractured because of a manufacturing defect. The Complaint does not allege that the Trident™ implanted in Mr. Delaney left ... [the manufacturer's] custody in a defective condition. Mr. Delaney cannot avoid *Riegel* preemption simply by labeling a product defect claim a manufacturing defect claim. In order to properly allege a manufacturing defect claim, Mr. Delaney must allege that something was wrong with the product." *Delaney v. Stryker Orthopaed-*

*ics,* No. 08–03210, 2009 WL 564243, at *6 (D.N.J. March 5, 2009).

In the instant case, there exists no dispute that the EON IPG is a Class III medical device. Plaintiffs' amended complaint asserts that the EON IPG was negligently manufactured and suffered from a design defect, as well as stating that Defendants are liable due to a failure to warn. Plaintiffs aver that Class III preemption is inapplicable because "preemption only applies to design defects and the initial failure in this case is considered a manufacturing defect." (Docket No. 23). Unfortunately, Plaintiffs do not reveal the source of this legal standard. Plaintiffs further assert that their claims are not preempted because the FDA determined that the EON IPG was adulterated and not in compliance with Quality System Regulation.[3] Plaintiffs also aver that Defendants failed to establish and maintain adequate procedures for validating device design, as well as adequate procedures for finished device acceptance in order to ensure that the devices met all acceptance criteria.

## C. Failure to Warn

 Plaintiffs advance a failure to warn claim as part of their product liability cause of action. In Puerto Rico, "[a] products liability plaintiff alleging failure to warn must prove (1) the manufacturer knew, or should have known of the risk inherent in the product;(2) there were no warnings or instructions, or those provided

---

**3.** 21 CFR § 820.1(a)(1) states: "Current good manufacturing practice (CGMP) requirements are set forth in this quality system regulation. The requirements in this part govern the methods used in, and the facilities and controls used for, the design, manufacture, packaging, labeling, storage, installation, and servicing of all finished devices intended for human use. The requirements in this part are intended to ensure that finished devices will be safe and effective and other-

wise in compliance with the Federal Food, Drug, and Cosmetic Act (the act). This part establishes basic requirements applicable to manufacturers of finished medical devices. If a manufacturer engages in only some operations subject to the requirements in this part, and not in others, that manufacturer need only comply with those requirements applicable to the operations in which it is engaged."

were inadequate;(3) the absence of warnings made the product inherently dangerous;(4) the absence of adequate warnings or instructions was the proximate cause of plaintiff's injury." *Cruz–Vargas v. R.J. Reynolds Tobacco Co.*, 348 F.3d 271, 276 (1st Cir.2003) (citing *Aponte Rivera v. Sears Roebuck de P.R., Inc.*, 44 P.R. Offic. Trans. 7, 144 D.P.R. 830, 838 (1998)).

Plaintiffs' failure to warn claim is preempted to the extent that it purports to impose liability despite compliance with federal regulations. *Riegel*, 552 U.S. at 330, 128 S.Ct. 999. The first prong of *Riegel* is met because the device is already subject to a PMA. *Riegel*, 552 U.S. at 322, 128 S.Ct. 999. Therefore, Plaintiffs' state-law claim must not create a requirement that is different from or in addition to existing federal requirements in order to avoid preemption. 21 U.S.C. § 360k(a).

Plaintiffs aver that because Jimenez Carrelo did not receive a charging system after surgery that their failure to warn claim may proceed. Plaintiffs further posit that because the Defendants were not in compliance with FDA regulations that their claim is not preempted (Docket No. 23).

█ The Court understands that whether or not Jimenez Carrelo received adequate warnings along with the charging system after his surgery is a genuine issue of material fact. Unlike the majority of the cases that address failure to warn claims within the Class III medical device context, Plaintiffs do not posit that the product labeling was insufficient or deficient, but rather that no warning was received at all. As a result, Plaintiffs are not advocating for labeling or warning that is different from or in addition to that which is already approved in the device PMA. Despite Plaintiffs' failure to state what federal regulation was violated, the Court finds it inconceivable that Plaintiffs' claim would impose requirements that are different from or in addition to existing federal regulations.

Thus, the Court concludes that Plaintiffs' failure to warn claim is in fact a parallel claim and therefore not preempted. Furthermore, the Court concludes that there exists a genuine issue of material fact as to the failure to warn claim.

As a result of the foregoing, the Court **DENIES** Defendants' motion for summary judgment as to the failure to warn claim.

### D. Defective Manufacturing

█ Plaintiffs also advance a claim that the product was defectively manufactured and that the claim is not preempted because Defendants failed to comply with federal regulations. The Supreme Court of Puerto Rico has adopted a strict liability approach for damages resulting from defective products. *Mendez Montes De Oca v. Aventis Pharma*, 579 F.Supp.2d 222, 226 (D.P.R.2008) (citing *Mendoza v. Cerveceria Corona, Inc.*, 97 D.P.R. 499 (1969)); *see also Aponte Rivera*, 144 D.P.R. at 838; *Rivera Santana v. Superior Packaging, Inc.*, 1992 P.R.-Eng. 754830, 132 D.P.R. 115, 125 (1992). The three types of defect that trigger strict liability principles are: manufacturing defects, design defects, and defective warnings. *Mendez Montes De Oca*, 579 F.Supp.2d at 226 (citing *Aponte Rivera*, 144 D.P.R. at 839–840 (1998)).

█ In order to determine whether or not this claim is preempted, the Court must first ask whether the FDA has established requirements applicable to the EON IPC "*Riegel* established that any Class III device receiving PMA approval by the FDA will satisfy this first prong of the test . . ." *Riegel*, 552 U.S. at 322, 128 S.Ct. 999. Thus, the Court easily concludes that the first prong of the *Riegel* test is met. In analyzing the second prong, the Court must determine whether or not the state law at issue creates a requirement that is

related to the safety of the device that is different from or in addition to the federal requirements. *Id.*

Plaintiffs argue that their claim is not preempted because their claim is premised on Defendants' failure to comply with Quality System Regulations. "The Quality System Regulations also set forth Current Good Manufacturing Practices." *Bausch,* 630 F.3d at 554. On the other hand, Defendants assert that this claim is preempted because Plaintiffs merely cite to the warning letter without providing a cognizable link between the alleged federal violation and the sustained injury. Defendants also seem to imply without actually stating that even if Plaintiffs met the cognizable link standard outlined in *Horowitz*, their claims are preempted because citing to violations of either Quality Service Regulation or Current Good Manufacturing Practices is insufficient to substantiate a federal violation claim.[4] *See Ilarraza,* 677 F.Supp.2d at 588.

In *Horowitz*, the Plaintiff cited to both FDA warning letters and manufacturer voluntary recalls, but failed to explain to the court how "her Trident System, which was implanted in her body in 2005, relates to investigations conducted by the FDA in 2006 and 2007." *Horowitz,* 613 F.Supp.2d at 282. In the instant case, Plaintiffs similarly fail to provide any indication of how the device implanted in Jimenez Carrelo in February of 2008 relates to the FDA warning letter of June 26, 2009 or the voluntary recall of November 10, 2009. Plaintiffs "cannot simply incant the magic words" that Defendants violated FDA regulations "in order to avoid preemption." *Id.* (citing *Medtronic Leads,* 592 F.Supp.2d at 1158 (D.Minn.2009)). Moreover, the nonmovant may not defeat a properly focused motion for summary judgment by relying on mere allegations without introducing definite and competent evidence. *Castillo–Rodriguez,* 23 F.3d at 581 (citations omitted).

---

**4.** Some courts have held that the general pleading of Current Good Manufacturing Practices violations is insufficient to state a plausible parallel claim. *See Medtronic Leads,* 592 F.Supp.2d at 1157–1158; *Ilarraza,* 677 F.Supp.2d at 588; *Horowitz,* 613 F.Supp.2d at 278–79. These cases conclude that the Current Good Manufacturing Practices are too broad and cannot serve as the basis for a parallel claim. However, this Court disagrees with such a statement and finds that the approach espoused by the Sixth and Seventh Circuits represents a better alternative. *See Howard v. Sulzer Orthopedics, Inc.,* 382 Fed. Appx. 436 (6th Cir.2010) (unpublished opinion); *Bausch,* 630 F.3d at 555. The Court does not "see a sound legal basis for defendants' proposal to distinguish between general requirements and concrete, device-specific requirements. Section 360k makes preemption a defense if a state seeks to impose on a manufacturer any requirement—(1) which is different from, or in addition to, any requirement applicable under this chapter to the device, and (2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable

to the device under this chapter." *Bausch,* 630 F.3d at 555 (citing 21 U.S.C. § 360k(a)). The Court notes the use of the phrase "any requirement". Moreover, federal law is clear: "for manufacturers of Class III medical devices, the Quality System Regulations and Current Good Manufacturing Practices adopted by the FDA under its delegated regulatory authority are legally binding requirements under this chapter." *Id.* (citing 21 C.F.R. § 820.1). "The failure to comply with any applicable provision in this part [of the regulations] renders a device adulterated under section 501(h) of the act. Such a device, as well as any person responsible for the failure to comply, is subject to regulatory action." *Id.* at 555 (citing 21 C.F.R. § 820.1(c)).

Thus, the Court does not find that the Quality System Regulations or the Current Good Manufacturing Practices are too general to allow their enforcement. More importantly, the Court believes that enforcing a distinction between general and specific requirements threatens to leave injured patients without any remedy when manufacturers violate federal regulations.

■ Plaintiffs also posit that the device was defectively manufactured because the lead diagnostic report confirmed that the EON IPG suffered from lead contact failure. The EON IPG leads could have failed for a variety reasons as evidenced by Ted Milo's deposition (Docket No. 37, Exhibit 3). Moreover, the failure of a Class III medical device does not establish the existence of a manufacturing defect. *See Funk v. Stryker Corp.,* 673 F.Supp.2d 522, 531 (S.D.Tex.2009); *Rankin v. Boston Scientific Corp.,* No. 09–177–KSF, 2010 WL 672135(E.D.Ky. Feb. 19, 2010). Therefore, the Court concludes that there exists no genuine issue of material fact and finds that the defective manufacturing claim is effectively preempted.

As a result of the foregoing, the Court **GRANTS** Defendants' motion for summary judgment as to the defective manufacturing claim.

### E. Design Defect

The rather confusing statements in Plaintiffs' amended complaint fail to inform the Court of whether Plaintiffs are abandoning their design defect claim or blatantly admitting that their claim is preempted.

The Supreme Court of Puerto Rico has recognized three types of defects that trigger strict liability: (1) manufacturing defects; (2) design defects; and (3) defective warnings. *Mendez Montes De Oca,* 579 F.Supp.2d at 226 (citing *Aponte Rivera,* 144 D.P.R. at 839–840). The Supreme Court of Puerto Rico held in *Aponte Rivera v. Sears Roebuck, Inc.,* that a design is defective: "when a product fails to perform as safely as would be expected by an ordinary user when the product is being used for its intended use or for which it could foreseeably be used, or when the product design is the proximate cause of the damages and defendant fails to show that in the balance of interests the benefits

of the design in question surpass the inherent risks of danger in the design." 144 D.P.R. at 839–840.

However, as has been repeatedly discussed in this opinion, only state-law claims that are premised on a violation of federal regulations may proceed against Class III medical device manufacturers.

■ Any allegation by Plaintiffs that challenges the FDA approved design would be expressly preempted because it would impose requirements that are different from, or in addition to, the existing federal regulations.

Similarly to their manufacturing defect claim, Plaintiffs again assert that their claim is not preempted because it is premised on Advanced Neuromodulation System's violations of federal regulations. More specifically, Plaintiffs allege that Defendants failed to establish and maintain adequate procedures for validating device design. However, Plaintiffs fail to provide a cognizable link between the alleged federal violations and the sustained injury. Plaintiffs do not provide any indication of how the device implanted in Jimenez Carrelo in 2008 relates to the FDA warning letter of June 26, 2009 or the voluntary recall of November 10, 2009. *See Horowitz,* 613 F.Supp.2d at 282. As a result, Plaintiffs' have failed to advance a parallel claim. Plaintiffs' claim that the EON IPG is defectively designed for not protecting against lead contact failures is also preempted as it would impose requirements that are different from or in addition to the design approved by the PMA. Therefore, the Court concludes that there exists no genuine issue of material fact.

As a result of the foregoing, the Court **GRANTS** Defendants' motion for partial summary judgment as to the design defect claim.

### III. Conclusion

For the reasons explained above, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' motion for summary judgment and **DISMISSES** the defective manufacturing and defective design claims **WITH PREJUDICE.**

**IT IS SO ORDERED.**